## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **GEORGE R. DAY,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 1:12-cv-141-DBH** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found, in the wake of a prior remand of this case by this court, that the plaintiff was capable of performing work existing in significant numbers in the national economy.  The plaintiff seeks reversal and remand on the grounds that the administrative law judge (i) violated the so-called "mandate rule" when he determined post-remand that the plaintiff's mental impairments were nonsevere, (ii) in any event, reached a finding unsupported by substantial evidence that those mental impairments were nonsevere, and (iii) failed to include restrictions stemming from the plaintiff's mental and physical impairments in determining his residual functional capacity ("RFC").  *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 14) at 3-17.[2]  I conclude that the administrative

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office.  Oral argument was held before me on December 12, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

[2] In his statement of errors and accompanying fact sheet, the plaintiff indicated that he had applied only for "Title II," or SSD, benefits.  *See* Statement of Errors at 1, 3; Fact Sheet (ECF No. 14-1), attached thereto.  However, the administrative law judge described him as having applied for both SSD and SSI benefits, *see* Record at 444, and (*continued on next page*)

law judge did violate the mandate rule and that, contrary to the contention of the commissioner's counsel at oral argument, the error was not harmless.  Accordingly, I recommend that the court vacate the decision and remand this case for further proceedings consistent herewith.

The decision was issued on May 16, 2011, pursuant to an order of this court dated April 16, 2010, reversing, at the commissioner's request, a prior decision dated July 31, 2009, and remanding the case for further proceedings.  *See* Record at 7-19, 444-56, 481-82.  In his 2009 decision, the administrative law judge had found, in relevant part, that the plaintiff had severe impairments of an affective disorder, obesity, and osteoarthritis, Finding 3, *id*. at 9; that he retained the RFC to perform sedentary work except that he needed a sit-stand option and no more than low-stress work, Finding 5, *id*. at 15, defined as "work requiring no more than occasional interaction with the public, co-workers and supervisors[,]" *id*. at 16, and that he was able to perform work existing in significant numbers in the national economy, Finding 10, *id*. at 17.  In reversing that decision, this court ordered that:

> [U]pon remand, the ALJ [administrative law judge] will be directed to conduct a new hearing and evaluate further the [plaintiff's] residual functional capacity.  If the Administrative Law Judge again finds that the [plaintiff] requires a sit/stand option, he will specify its frequency.  Further, the Administrative Law Judge will be directed to evaluate further and specify the weight attached to Dr. Peter Allen's non-examining opinion.

*Id*. at 481.  On August 9, 2010, the Decision Review Board issued its own remand order vacating the earlier decision, remanding the case to an administrative law judge for further proceedings consistent with the court's order, and stating:

> The hearing decision indicates that the [plaintiff's] severe impairments result in an ability to perform sedentary work with a sit-stand option and work which does not entail more than low stress work (Finding No. 5).  However, the decision does

---

counsel for the commissioner stated, at oral argument, that this was his understanding, as well.  Subsequent to oral argument, the plaintiff's counsel confirmed that his client had applied for both as of the time of his second hearing. *See* ECF No. 19.

not specifically describe the frequency of the [plaintiff's] need for a sit-stand option.

The administrative record includes evidence from Peter G. Allen, Ph.D., a non-examining source.  In an assessment dated May 1, 2008, he noted that although the [plaintiff] could understand and remember at least simple tasks, his symptoms of depression would limit more complex or detailed tasks.  This opinion evidence is acknowledged; however, the decision does not indicate the weight afforded this opinion evidence.

*Id*. at 489 (citations omitted).  The Decision Review Board directed that, on remand, the administrative law judge:

Give further consideration to the [plaintiff's] maximum residual functional capacity during the entire period of time at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p).  In so doing, evaluate the nonexamining source opinion of Dr. Allen in accordance with the provisions of 20 CFR 404.1527(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence.  In addition, if a sit-stand option is again directed, determine its frequency.

*Id*. at 490.  The Decision Review Board further directed that the administrative law judge consolidate a later-filed claim with the case and "offer the [plaintiff] an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." *Id*.

Post-remand, the administrative law judge obtained additional evidence, including updated treatment records, *see, e.g., id*. at 623-84, 693-728, a fresh report from consulting examiner Donna M. Gates, Ph.D., *see id*. at 684-88, who had examined the plaintiff in connection with the 2009 decision, *see id*. at 249-52, a Psychiatric Review Technique Form ("PRTF") from nonexamining consultant Brian Stahl, Ph.D., *see id*. at 729-41, a report from consulting examiner David S. Axelman, M.D., regarding the plaintiff's physical impairments, *see id*. at 689-92, and a physical RFC opinion by nonexamining consultant Donald Trumbull, M.D., *see id*. at 743-50.  The administrative law judge also took testimony, at a post-remand

hearing, not only of the plaintiff but also of treating psychiatric nurse practitioner Barbara Womble, F.N.P., A.R.N.P., two impartial medical experts, psychologist Ira Hymoff, Ph.D., and internist Peter B. Webber, M.D., and an impartial vocational expert, Charles Galarraga, *see id*. at 444, 756.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2010, Finding 1, Record at 446; that he had severe impairments of bilateral knee degenerative joint disease, hernia, and obesity, Finding 3, *id*.; that he retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)[3] and could understand, remember, and carry out simple instructions, demonstrate sufficient judgment to make simple work-related decisions, respond appropriately to co-workers, supervisors, and usual work situations, and adapt to changes in a routine work setting, Finding 5, *id*. at 452; that, considering his age (42 years old, defined as a younger individual, on his alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 455-56; and that he, therefore, was not disabled from October 15, 2006, his alleged disability onset date, through May 16, 2011, the date of the decision, Finding 11, *id*. at 456.[4]  The Appeals Council did

---

[3] The administrative law judge mistakenly cited 20 C.F.R. §§ 404.1567(b) and 416.967(b), which pertain to light work.

[4] Although, for purposes of the plaintiff's application for SSD benefits, he was required to demonstrate that he was disabled on or before his date last insured, March 31, 2010, his condition through the date of the decision was relevant for purposes of SSI benefits, which are not tied to a claimant's date last insured.  *See Splude v. Apfel*, 165 F.3d 85, 87 (1st Cir. 1999) ("In 1972, Congress added a new social security program to provide 'supplemental security income' (called 'SSI') for 'aged, blind and disabled' persons of limited means regardless of their insured status.  This is a social welfare program funded out of general taxpayer revenues.  SSI is available even to those who (*continued on next page*)

not assume jurisdiction of the case after remand, *id.* at 424-27, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a) & (d), 416.1484(a) & (d); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of

---

qualify for SSD, but SSD income is considered in determining whether a disabled person qualifies for SSI under the latter's means test.") (citations omitted); *Chute v. Apfel*, No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) ("To be eligible to receive SSD benefits the plaintiff had to have been disabled on or before her date last insured (March 31, 1995); however, eligibility for SSI benefits is not dependent on insured status.").

an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I.   Discussion

### A.   Mental Impairments

### 1.   Overview of Mandate Rule

The plaintiff first argues that the administrative law judge contravened the "mandate rule" by reexamining the question of whether he had a severe mental impairment and determining, contrary to his 2009 finding, that he did not. *See* Statement of Errors at 3-6.  As the First Circuit has observed:

> Under the law of the case doctrine, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.  We have sometimes said that law of the case has two branches or two forms.  The first branch, called the "mandate rule," prevents relitigation in the trial court of matters that were explicitly or implicitly decided by an earlier appellate decision in the same case.  The second branch contemplates that a legal decision made at one stage of a criminal or civil proceeding should remain the law of that case throughout the litigation, unless and until the decision is modified or overruled by a higher court.

***

> [L]aw of the case serves important interests, such as stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy.  Courts should therefore be loathe to disturb prior decisions in a case.  Nevertheless, courts may reopen a matter previously decided on a showing of exceptional circumstances – a threshold which, in turn, demands that the proponent accomplish one of three things: show that controlling legal authority has changed dramatically; proffer significant new evidence, not earlier obtainable in the exercise of due diligence; or convince the court that a blatant error in the prior decision will, if uncorrected, result in a serious injustice.

6

*Negrón-Almeda v. Santiago*, 579 F.3d 45, 50-52 (1st Cir. 2009) (citations and internal quotation marks omitted).

The First Circuit has not had occasion to apply the mandate rule in the context of Social Security decisions, but this court has done so in at least two cases, *Steele v. Astrue*, No. 2:09-cv-548-DBH, 2011 WL 4635136 (D. Me. Oct. 5, 2011) (rec. dec., *aff'd* Oct. 25, 2011), and *Maddocks v. Astrue*, No. 1:11-cv-461-NT, 2012 WL 5255197 (D. Me. Sept. 30, 2012) (rec. dec., *aff'd* Oct. 23, 2012).  In *Steele*, this court observed:

> The commissioner's regulations provide, in relevant part, that when a federal court remands a case to the commissioner for further consideration, "[a]ny issues relating to [the] claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."  20 C.F.R. §§ 404.983, 416.1483.  Nonetheless, "it is well established that district courts have the power to limit the scope of remand in this kind of case and that the [Social Security Administration] – notwithstanding its regulations – must abide by the court's limiting instructions."  *Warner v. Astrue*, Civil No. 09-cv-324-JL, 2010 WL 2266874, at *1 (D.N.H. June 3, 2010) (citation and internal quotation marks omitted).  *See also, e.g., Hollins v. Massanari*, 49 Fed. Appx. 533, 535-36 (6th Cir. 2002) ("Under the 'mandate rule,' administrative agencies generally are obligated to follow the mandates set forth in a federal court decision. . . .  [T]he administrative law judge may not do anything expressly or impliedly in contradiction to the district court's remand order[,]" although he or she may "act[] in ways that go beyond, but are not inconsistent with, the district court's opinion."); *Calderon v. Astrue*, 683 F. Supp.2d 273, 277 (E.D.N.Y. 2010) (administrative law judge erred in revisiting, on remand, a Step 4 finding favorable to claimant in circumstances in which "the Court's mandate was merely to correct a procedural error in [the administrative law judge's] step-five determination; it was not an invitation to revisit the [decision that was remanded] in its entirety").

*Steele*, 2011 WL 4635136, at *1.

In *Steele*, a claimant sought clarification as to whether an administrative law judge could properly reconsider, on remand, a portion of his vacated decision holding that she had shown that she was disabled as of October 2, 2002.  *See id*.  The issue presented on appeal had been narrow: whether the plaintiff had failed to demonstrate good cause to extend her deadline for appealing

SSD and SSI applications filed in 2002.  *See id*. at *2.  The commissioner took the position that, because his final decision had been vacated, the administrative law judge was not limited on remand to considering only that narrow issue.  *See id*. at *1.  This court disagreed, noting that it had held that the plaintiff was entitled to have that narrow point adjudicated, and had reversed and remanded for proceedings consistent therewith.  *See id*. at *2.  The court observed:

> This was not a garden-variety Social Security appeal in which the plaintiff appealed a decision of the commissioner finding her not disabled.  With respect to her 2008 applications, she had won her disability case.  She appealed only the independent, collateral finding that she did not demonstrate good cause for extending her deadline to request reconsideration of her 2002 applications.  To interpret the court's order as the commissioner has done not only would have a chilling effect on the exercise of claimants' appeal rights but also is fundamentally inconsistent with my recommended decision, as adopted by Judge Hornby.

*Id*.

*Maddocks*, by contrast, was a "garden-variety" Social Security appeal.  *See Maddocks*, 2012 WL 5255197, at *2.  Nonetheless, this court found that the administrative law judge contravened the mandate rule when, in the face of a reversal and remand for the purposes of (i) updating the medical evidence of record, (ii) further evaluating the claimant's mental impairments, (iii) further evaluating her RFC, and (iv) obtaining medical and vocational expert evidence, if warranted, the administrative law judge reexamined whether the claimant's physical impairments were severe, concluding, contrary to his finding in his first decision, that they were not.  *See id*. at *2-*3.  The court added that, "[a]ssuming *arguendo* that the administrative law judge could reverse an earlier claimant-favorable finding on remand based on new evidence, he, nonetheless, committed reversible error" in relying on the new evidence in that case, which did not support his legal conclusion that the plaintiff's physical impairments fell short of satisfying the so-called "duration requirement."  *See id*. at *4-*5.

Here, as in *Maddocks*, the administrative law judge was directed on remand to further evaluate the plaintiff's RFC – an instruction that presupposed the severity of his underlying physical and mental impairments.   Indeed, to that end, the administrative law judge was specifically instructed to further evaluate the opinion of Dr. Allen, *see* Record at 481, 490, who had found the plaintiff's mental impairments severe, *see id*. at 286, 288.   This foreclosed reconsideration of the severity of the plaintiff's mental impairments.  *See Maddocks*, 2012 WL 5255197, at *3; *see also, e.g., Carrillo v. Heckler*, 599 F. Supp. 1164, 1168 (S.D.N.Y. 1984) (noting, in context of Social Security appeal, that "the remand order specifically stated the purpose for remand.   That purpose did not include reconsideration of the severity of the plaintiff's impairments.   Reconsideration by the ALJ [Administrative Law Judge] of that issue, therefore, was inconsistent with and beyond the scope of Judge Sweet's order.   That was error.").

At oral argument, counsel for the commissioner strove to distinguish *Maddocks* on two bases: that the impairment at issue in this case is mental, not physical, and that, in this case, the new evidence adduced following remand justified the change in result.   Alternatively, he contended that, even if the administrative law judge erred in reopening the Step 2 severity finding, the error is harmless in that vocational testimony taken at both the second and first hearings supports a finding of nondisability.

## 2.   Whether *Maddocks* Is Distinguishable

### a.   Mental *v*. Physical Impairment

With respect to his first basis for distinguishing *Maddocks*, counsel for the commissioner argued that, because the determination of whether a mental impairment is severe entails evaluation of a claimant's degree of functional limitation in three areas (activities of daily living, social functioning, and concentration, persistence, or pace), *see* 20 C.F.R. §§ 404.1520a(b)-(d),

416.920a(b)-(d), and the administrative law judge was directed to reevaluate the plaintiff's RFC, he did not err in going on to reconsider whether the plaintiff's functional restrictions continued to justify a finding that his mental impairments were severe.  Yet, this is a distinction without a difference: an administrative law judge must also evaluate the level of functional restriction caused by a physical impairment to determine whether it qualifies as "severe."  *See id*. §§ 404.1520(a)(4)(ii) & (c), 416.920(a)(4)(ii) & (c).  The fact that, in this case, the administrative law judge reevaluated the severity of a mental, rather than physical, impairment is immaterial to the application of the mandate rule.

### b.  Introduction of New Evidence on Remand

In *Maddocks*, this court assumed *arguendo* that an administrative law judge can reverse an earlier claimant-friendly finding on remand based on new evidence.  *See Maddocks*, 2012 WL 5255197, at *4.  My research indicates that, while the First Circuit has adopted an exception to the mandate rule based on the presentation on remand of "substantially different" evidence, that exception is not available in all circumstances.  *See United States v. Rivera-Martinez*, 931 F.2d 148, 151 (1st Cir. 1991).  Specifically, the "different evidence" exception "does not apply when a trial court gratuitously jettisons the [law of the case] rule in order to address an issue explicitly decided, and foreclosed, in an earlier appeal in the same case."  *Id*.  The First Circuit explained:

> Any other outcome would severely undermine the efficacy of the doctrine.  If, by the simple expedient of flaunting the law of the case, a trial court which should have deferred to an appellate court's resolution of an issue could proceed to address the issue anew, then the doctrine would disappear into thin air.  Federal jurisprudence wisely prohibits trial judges from orchestrating self-fulfilling prophecies of that sort.

*Id*.  This court and others have recognized this exception to the exception.  *See, e.g*., *Lyons v. Fisher*, 888 F.2d 1071, 1075 (5th Cir. 1989) ("We have held that the 'substantially different' evidence exception to the law-of-the-case doctrine does not apply where a prior appeal has not

left the issue open for decision.") (citation and internal quotation marks omitted); *United States v. Hall*, 434 F. Supp.2d 19, 24 n.3 (D. Me. 2006) ("New evidence cannot be considered if it bears on an issue that was not left open by an appellate decision remanding for further proceedings on other issues.") (citation and internal punctuation omitted).

Here, as in *Rivera-Martinez*, the administrative law judge addressed an issue that was not left open for reconsideration.  This court had expressly directed, on remand, that the administrative law judge reconsider the plaintiff's RFC, an analysis that occurs at Step 4, two steps subsequent to the Step 2 analysis of whether a claimant's impairments are severe.  The question of the severity of the plaintiff's mental impairments, hence, was not within the confines of post-remand issues with respect to which new evidence properly could alter the result.

In any event, assuming *arguendo* that the "different evidence" exception applies, the result is the same.  The First Circuit has emphasized that "[t]he litany of exceptional circumstances sufficient to sidetrack the law of the case is not only short, but narrowly cabined." *Rivera-Martinez*, 931 F.2d at 151.  "We agree with the Fifth Circuit that issues, once decided, should not be reopened unless *the evidence on a subsequent trial was substantially different*, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice."  *Id*. (citation and internal quotation marks omitted) (emphasis added).

Here, the evidence on remand was not substantially different from the evidence adduced prior to remand.[5]  Prior to remand, the administrative law judge had the benefit of (i) a report by

---

[5] This is a different question from whether, post-remand, the new Step 2 finding of nonseverity of mental impairments is supported by substantial evidence.  *See, e.g*., *Rivera-Martinez*, 931 F.2d at 152 n.4 (expressing little doubt that, if lower court had properly revisited the point at issue, its decision would have been supportable).  I need not, and do not, reach the issue of the supportability of the new Step 2 finding, which is raised in the alternative in the statement of errors.  *See* Statement of Errors at 6-12.

Dr. Gates of a consultative examination performed on January 10, 2008, *see* Record at 249-53, (ii) a PRTF dated February 5, 2008, in which Thomas Knox, Ph.D., assessed the plaintiff's mental impairments as nonsevere, *see id.* at 262, 272, 274, (iii) a PRTF dated May 1, 2008, in which Dr. Allen assessed the plaintiff's mental impairments as severe, *see id.* at 276, 286, 288, (iv) a mental RFC assessment by Dr. Allen dated May 1, 2008, *see id.* at 300, (v) a mental RFC assessment by Ms. Womble dated May 19, 2009, *see id.* at 412-13, and (vi) Ms. Womble's treatment notes spanning the period from January 8, 2008, *see id.* at 320, through May 18, 2009, *see id.* at 420-21.

Dr. Gates observed that, "[w]hen asked what would make it difficult for him to work, [the plaintiff] said, 'I wouldn't be able to get along with anybody.  I wouldn't be able to deal with them.'"  *Id.* at 252.  She added:

> [The plaintiff] reported that he experiences a depressed mood.  He is a convicted sex offender and is on the sex offender registry.  He has been mostly employed his adult life.  Based on the historical information, it appears that he is cooperative in following work rules.  He has been able to relate adequately to coworkers, supervisors, and the public despite some paranoid personality features.  He said that this started when he had to register on the sex offender registry.  Judgment is generally adequate on the job but he does have lapses as evidenced by his legal history.  He can function independently and prefers to be alone.  [The plaintiff] can complete simple jobs, and maintain his personal appearance.  He likely can behave in an emotionally stable manner on the job despite his depressed mood. He likely could be a reliable worker if he found employment that suited his needs.

*Id.*  Dr. Gates assessed the plaintiff with a GAF, or Global Assessment of Functioning, score of 65, indicative of mild impairment.  *See id.*[6]

---

[6] A GAF score represents "the clinician's judgment of the individual's overall level of functioning."  American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000) ("DSM–IV–TR"), at 32.  The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social, and occupational functioning."  *Id.*  The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  *Id.* at 34.  A GAF score of 61 to 70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., (*continued on next page*)

With the benefit of Dr. Gates' report, Dr. Knox assessed the plaintiff as having only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace, with no episodes of decompensation, each of extended duration.  *See id*. at 272, 274.  Hence, Dr. Knox found the plaintiff's mental impairments nonsevere.  *See id*.; *see also, e.g*., 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

With the benefit of review of Dr. Gates' report and Ms. Womble's progress notes spanning the period from January 10, 2008, through April 3, 2008, Dr. Allen concluded that the plaintiff's mental impairments were severe, imposing mild restriction of activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, or pace, as well as one or two episodes of decompensation, each of extended duration.  *See* Record at 286, 288.  In his mental RFC assessment, Dr. Allen found the plaintiff (i) capable of understanding and remembering at least simple tasks, although his symptoms of depression limited more complex or detailed tasks, (ii) able to sustain on tasks, and (iii) able to adapt to occasional and routine changes, although (iv) he would have difficulty interacting with the general public due to his paranoid personality disorder.  *See id*. at 300.

Ms. Womble assessed the plaintiff as seriously limited in a number of work-related abilities and aptitudes, including (i) maintaining regular attendance and being punctual within customary, usually strict tolerances, (ii) getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, (iii) interacting appropriately with the general public, and (iv) maintaining socially appropriate behavior.  *See id*. at 412-13.  In addition, she

occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." *Id*. (boldface omitted) (capitalization in original).

deemed the plaintiff unable to meet competitive standards in performing at a consistent pace without an unreasonable number and length of rest periods, dealing with the stress of semiskilled and skilled work, and adhering to basic standards of cleanliness and neatness. *See id*.

The administrative law judge resolved this sharply conflicting evidence in favor of a finding that the plaintiff had a severe mental impairment of an affective disorder. *See* Finding 3, *id.* at 9. He described Dr. Knox's assessment that the plaintiff's mental impairment was nonsevere as "against the substantial weight of the objective medical evidence of record[.]" *Id.* at 13. He adopted Dr. Allen's PRTF findings *sub silentio* as to all areas except the ability to maintain concentration, persistence, or pace, with respect to which he found that the plaintiff's depression imposed, at worst, mild difficulties. *See id*. at 14. He offered no explanation for his departure from Dr. Allen's conclusion that the plaintiff's difficulties in that sphere were moderate. *See id*.

With respect to the plaintiff's mental RFC, the administrative law judge stated that he found Dr. Gates' assessment "consistent with limitations relating to working with the public and tolerating stress." *Id*. at 16. He accorded "limited weight" to Ms. Womble's RFC opinion, which he deemed uncorroborated by other record evidence. *Id*. He summarized Dr. Allen's mental RFC opinion but neglected to discuss the weight given to it. *See id*.

On remand, the administrative law judge obtained evidence that was substantially similar to that summarized above. As before, the relevant new evidence was sharply conflicting, running the gamut from reports or opinions indicative of a mild level of impairment (the 2010 report of Dr. Gates and the 2011 PRTF of Dr. Stahl, *see id*. at 684-88, 729, 739, 741) to opinions that the plaintiff suffered from a marked or debilitating level of impairment (the testimony of Ms. Womble and Dr. Hymoff, *see id*. at 791-811, 812-17). If anything, the evidence on remand tilted

14

more in the plaintiff's favor since Ms. Womble no longer was the only mental health practitioner expressing the opinion that he suffered from marked mental-health limitations. Dr. Hymoff, an impartial expert who had reviewed the entire record and was present during both the plaintiff's and Ms. Womble's hearing testimony, testified that the plaintiff's restrictions were moderate to marked and expressly disagreed with Dr. Gates' findings. *See id*. at 813-16. The administrative law judge offered no explanation why, having found the plaintiff's mental impairments severe on a substantially similar – and arguably less plaintiff-friendly – record, he now found them nonsevere.[7]

For all of these reasons, even assuming *arguendo* that it is appropriate to apply the "different evidence" exception, the commissioner falls short of demonstrating that the post-remand evidence was sufficiently different to warrant the set-aside of the mandate rule.

### 3.  Whether Error Is Harmless

I turn, finally, to the argument made by counsel for the commissioner that any error in revisiting the severity of the plaintiff's mental impairments was harmless. In support of this point, counsel observed that:

1.      Even though, in his second decision, the administrative law judge did not find, as he had in his first decision, that the plaintiff was restricted to no more than occasional interaction with the public, co-workers, and supervisors, *compare* Finding 5, *id*. at 15; *id*. at 16 *with* Finding

---

[7] At oral argument, counsel for the commissioner underscored several respects in which Dr. Gates' 2010 report differed from her 2008 report, for example, that (i) whereas the plaintiff told Dr. Gates in 2008 that his inability to get along with others prevented him from working, he told her in 2010 that his physical impairments prevented him from working, *compare* Record at 252 *with id*. at 687, (ii) Dr. Gates stated in 2010, but not in 2008, that the plaintiff "presented with no clinically significant mental health limitations[,]" *compare id*. at 252 *with id*. at 687, (iii) Dr. Gates noted on mental status examination in 2008 that the plaintiff made no eye contact and reported having "a short fuse," but found on mental status examination in 2010 that he made good eye contact, *compare id*. at 251 *with id*. at 686 (internal quotation marks omitted), and (iv) Dr. Gates assessed the plaintiff in 2010 with a slightly higher GAF score of 70, albeit still in the mild impairment range, *compare id*. at 252 *with id*. at 688. Nonetheless, despite these differences, the 2008 Gates report is not substantially different from the 2010 report. It is notable that both Dr. Knox, with the benefit of the 2008 Gates report, and Dr. Stahl, with the benefit of the 2010 Gates report, assessed the plaintiff's mental impairments as nonsevere. *See id*. at 274, 741.

5, *id*. at 452, he added that restriction in posing a hypothetical question to the vocational expert at the second hearing, *see id*. at 836.  In response to that hypothetical question, which also included the restriction found in the second decision to understanding, remembering, and carrying out simple instructions, *see id*., the vocational expert testified that such a person could perform the job of surveillance system monitor/loss prevention, which has 87,000 jobs existing in the national economy, *see id*. at 839-40.

       2.     In any event, in response to a hypothetical question posed by the administrative law judge at the first hearing that included the restriction against more than occasional contact with the public, co-workers, and supervisors, *see id*. at 37, a different vocational expert testified that a person with that restriction could perform any of three jobs existing in significant numbers in the national economy, those of surveillance system monitor, document preparer, microfilm, and touch-up screener, printed circuit boards.  *See id*. at 37-38.

       Counsel for the commissioner acknowledged that the hypothetical question posed to the vocational expert at the first hearing omitted the "simple instructions" restriction.  However, he argued that the omission was immaterial because the three jobs at issue are unskilled, with a Specific Vocational Preparation ("SVP") level of 2.  *See id*.

       Counsel for the commissioner cited several cases in support of the proposition that an administrative law judge properly may rely on vocational testimony from a prior hearing in the same case.  *See, e.g., Byrd v. Astrue*, No. 3:07-CV-121, 2008 WL 4327006, at *9 (E.D. Tenn. Sept. 16, 2008); *Naudain v. Apfel*, 119 F. Supp.2d 812, 818-19 (C.D. Ill. 2000).  Nonetheless, as the plaintiff's counsel pointed out at oral argument, the administrative law judge did not rely on vocational testimony given at either the first or the second hearing in the decision at issue on this

appeal.  *See id*. at 456.  Instead, he relied solely on the so-called "Grid," the Medical-Vocational

Rules of Appendix 2 to 20 C.F.R. Part 404, Subpart P.  *See id*.

Pursuant to the rule of *SEC v. Chenery Corp*., 332 U.S. 194 (1947), "a reviewing court

cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at

all, on the basis of a rationale actually articulated by the agency decision-maker."  *Clark v.

Astrue*, Civil No. 09-390-P-H, 2010 WL 2924237, at *3 (D. Me. July 19, 2010) (rec. dec., *aff'd*

Aug. 9, 2010).  "[A]n exception to the *Chenery* rule exists when a remand will amount to no

more than an empty exercise because, for example, application of the correct legal standard

could lead to only one conclusion[.]"  *Id*. at *4 (citation and internal quotation marks omitted).

However, that exception does not apply here.

The commissioner's reliance on the testimony of the vocational expert in response to the

RFC posited at the first hearing is misplaced because both this court and the DRB deemed that

RFC unsupported by substantial evidence, directing its reconsideration on remand.  *See* Record

at 481, 490.  His reliance on the RFC posited to the vocational expert at the second hearing is

misplaced because, as discussed above, the administrative law judge wrongly found the

plaintiff's mental impairments nonsevere.  The cited testimony, hence cannot serve to meet the

commissioner's Step 5 burden.  *See, e.g., Richardson v. Social Sec. Admin. Comm'r*, No. 1:10-

cv-00313-JAW, 2011 WL 3273140, at *11 (D. Me. July 29, 2011) (rec. dec., *aff'd* Aug. 18,

2011) ("At step 5, the burden shifts to the Commissioner to demonstrate that a significant

number of jobs exist in the national economy that the claimant could perform.  Ordinarily, the

Commissioner will meet the step 5 burden, or not, by relying on the testimony of a vocational

expert in response to a hypothetical question whether a person with the claimant's RFC, age,

education, and work experience would be able to perform other work existing in the national

economy.  At hearing the Commissioner must transmit a hypothetical to the vocational expert that corresponds to the claimant's RFC.") (citations and internal quotation marks omitted).  The commissioner, hence, falls short of showing that the vocational expert testimony given at either hearing renders remand an empty exercise.

In any event, even assuming *arguendo* that the administrative law judge supportably could have found the plaintiff limited to simple instructions and unable to interact more than occasionally with the public, co-workers, and supervisors, there are independent reasons why the vocational testimony at issue does not meet the *Chenery* exception test.

As the plaintiff's counsel observed at oral argument, the testimony of the vocational expert at the second hearing was equivocal.  While he testified that a person with the posited hypothetical could perform the job of surveillance system monitor/loss prevention as described in the Dictionary of Occupational Titles, he expressed doubt, based on his actual experience with the job, that such a person could perform it.  *See* Record at 836-40.  Because the administrative law judge did not rely on the vocational expert's testimony, he did not discuss or resolve that tension.

With respect to the testimony of the vocational expert given at the first hearing, the commissioner wrongly assumes that the fact that a job is unskilled (that is, has an SVP 2 rating) necessarily renders it compatible with a limitation to simple instructions.  This court has held otherwise.  *See, e.g., Decker v. Astrue*, Civil No. 09-641-P-S, 2010 WL 4412142, at *3 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010) ("SVP ratings speak to the issue of the level of vocational preparation necessary to perform the job, not directly to the issue of the job's simplicity, which appears to be more squarely addressed by the GED ratings.") (citation and internal quotation marks omitted).

For these reasons, the commissioner's harmless-error argument falls short.

## B. Physical Impairments

I briefly discuss the plaintiff's remaining point of error challenging the administrative law judge's physical RFC finding, which I conclude does not independently warrant reversal and remand.

The plaintiff contends, in relevant part, that the administrative law judge erred in finding him capable of a full range of work at the sedentary level.  *See* Statement of Errors at 13-17; *see also* Record at 452, 454-55 (rejecting the opinion of testifying expert Dr. Webber that the plaintiff was capable of less than a full range of sedentary work in favor of that of nonexamining consultant Dr. Trumbull that he could perform a full range of sedentary work).[8]  As the plaintiff notes, *see* Statement of Errors at 13, the administrative law judge did so primarily on the basis of a credibility determination, rejecting the plaintiff's allegations that ambulatory restrictions and pain distraction would prevent him from working on a regular and continuous basis.  *See id*

The plaintiff challenges that credibility finding, arguing that the administrative law judge (i) credited portions of his testimony that support his complaints, (ii) discounted other portions of his testimony without articulating any basis for doing so, and (iii) found, against the weight of the evidence, that the plaintiff's medications were effective in controlling his knee pain.  *See* Statement of Errors at 14-17.

"The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to

---

[8] As the administrative law judge indicated, *see* Record at 452, 455, Dr. Trumbull's opinion is consistent with the 2010 opinion of examining consultant Dr. Axelman, *see id*. at 692, and with two 2008 opinions of nonexamining consultant Iver C. Nielson, M.D., *see id*. at 254-61, 290-97.  On examination, Dr. Axelman found that the plaintiff's "ability to do work-related activities is not limited in any major way with sitting[,]" although "standing and walking are considerably limited because of his left knee severe arthritic problems" and he "has difficulty bending at the waist . . . and lifting with his back[.]"  *Id*. at 692.  This reflected the plaintiff's condition nearly six months after the expiration of his date last insured.

deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987).

While, as the plaintiff points out, *see* Statement of Errors at 15, the administrative law judge credited his testimony that he leaves his house once or twice a month to shop or do laundry and does very little walking, *see* Record at 454, that testimony, standing alone, does not compel a finding that his functional limitations and claimed pain distraction would prevent gainful activity. Assuming *arguendo* that the administrative law judge did err in (i) discrediting some of the plaintiff's testimony on the basis that he appeared to testify unreliably and (ii) finding that the plaintiff's medications were effective in alleviating his discomfort, he offered other detailed reasons for his credibility finding. For example, he observed that the plaintiff testified that he spends his days playing computer games, watching television, and playing with his cat, activities that seemingly were inconsistent with his claimed level of pain distraction, *see id.*, and that he refused to persist with physical therapy and was discharged in November 2009 for a failure to keep appointments and was noncompliant with instructions to lose sufficient weight to be eligible for knee surgery, raising doubts about the severity of his pain and functional limitations, *see id.* at 455. These observations support the overall credibility finding, affording no basis for the court to disturb it.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for the proceedings not inconsistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for*

**which _de novo_ review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.**

**Failure to file a timely objection shall constitute a waiver of the right to _de novo_ review by the district court and to appeal the district court's order.**

Dated this 30th day of December, 2012.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge